NATHANIEL WILSON *vs.* EUROPEAN & NORTH AMERICAN RAILWAY COMPANY.

Penobscot.     Decided May 8, 1877.

*Railroad.*

A mortgagee, out of possession, whose mortgage is recorded, should be made a party to proceedings instituted by a railroad company before county commissioners to ascertain the damages of land owners for land taken for its road.

Where no notice is given to the mortgagee, and the damages are awarded and paid to the mortgager, the mortgagee may recover therefor in an action of trespass against the company by virtue of the provision of R. S., c. 51, § 6.

ON REPORT.

TRESPASS on Freeze lot.

At the April term of S. J. C. 1875, the action was referred to John A. Peters, who met and heard the parties December 13, 1875, and returned into court the following award :

"I find that the plaintiff had a mortgage upon the locus, in full force, when the land was taken by the defendants for the extension of a branch of their railroad track ; but the plaintiff had no

actual possession of it till after the damages allowed by the commissioners for the taking were pai i to the mortgager. The mortgage was given to the plaintiff by D. W Freeze, dated May 25, and recorded May 26, 1869, to secure a note of that date for $112, payable on or before July 1, 1870.

"It is not questioned that all the proceedings of the railroad company and the commissioners were regular and authorized, except that the plaintiff claims that the award of damages should have been made to him (the mortgagee) when they were allowed and paid to said Freeze (the mortgager). Either side to make such reference to any of the proceedings of the commissioners as they may see fit.

"No part of the mortgage debt has been paid, and in January 1871, the plaintiff got possession of the locus (not interfering with the land taken for the track) by a judgment for a foreclosure, and the mortgage stands now by lapse of time foreclosed.

"On July 14, 1870, when the commissioners were upon the road, to take their views and hear the parties upon the questions of damages, the plaintiff was before them as an attorney as to other lots, but not as to this lot, and at that time notified the commissioners and the acting attorney of the railroad company present, who was also a director, that he had a claim on this lot (the locus) by note and mortgage, and 'should claim the damages assessed upon it.'

"Nothing else appeared about it afterward until demands were made for the damages allowed upon the defendants, which were after the damages were allowed Freeze and to him paid.

"Upon these facts and findings the law court will determine whether the plaintiff can recover against the defendants or not. If he can recover at all, then the measure of damages to be settled. If the plaintiff can recover for the easement, the defendants to continue as rightfully in possession, the damages to be seventy-five dollars with interest from July 1, 1870. But if the defendants are trespassers without the right to continue in possession, then the damages to be fifty dollars and interest from such date. The prevailing party to recover costs."

*N. Wilson, pro se,* with whom was *A. Sanborn.*

*C. P. Stetson*, for the defendants.

The defendant company located its railroad over land of one Freeze, who was then the owner in possession. Damages were assessed by the county commissioners, as provided by statute, and the amount awarded paid to Freeze. Wilson, mortgagee, brings this action of trespass. He did not take possession of the premises until after the location, assessment and payment of damages ; he cannot maintain this action, because the estimation of damages and payment to Freeze, gave the company the right of possession and title to the locus for the purposes of its railroad. R. S., c. 51. *Breed* v. *Eastern Railroad,* 5 Gray, 470 n. *Parish* v. *Gilmanton,* 11 N. H. 293.

PETERS, J. The question is, whether it is necessary that a mortagee, whose mortgage is recorded, not being in actual possession of the mortgaged premises, should have notice of the pendency of proceedings instituted by a railroad corporation before county commissioners to ascertain the damages of land owners for land taken for the track of its road.

We think a mortagee should be notified and made a party to the proceedings, and that the railroad company takes the risk of a want of notice if none is given. Practically, however, in many cases the necessity of notice is avoided ; as where the mortgagee waives the damages, being satisfied with his security upon the land that is not taken ; or where the damages are awarded to the mortgager and are paid over to the mortgagee upon his receipt or release therefor. And, we have no doubt, a mortgagee might resort to proceedings in chancery to recover the damages awarded to the mortgager. But the railroad corporation must see that the mortgagee is somehow paid or satisfied for the land taken so far as covered by the mortgage.

The statute (R. S., c. 51, § 2,) provides that "persons having any interest in land (taken for railroad) have the rights and remedies of owners to the extent of their interest." Certainly, a mortgagee whose mortgage is recorded has an interest as an owner within the meaning of this section. The easement taken may despoil the mortgaged land of all its value. Without notice,

a mortgagee might lose his entire security by proceedings carried on without his knowledge or consent. By our law, it is well settled that the strict legal estate passes to the mortgagee, to be defeated only by the subsequent performance of the condition annexed. He has the right to take possession at any time, unless there be an agreement between the mortgager and mortgagee to the contrary. This right is supported by repeated decisions, at the head of which is *Blaney* v. *Bearce*, 2 Maine, 132. He may support an action of trespass *quare clausum fregit* against a stranger for an injury to the freehold. *Frothingham* v. *McKusick*, 24 Maine, 403. And even against the mortgager for such an injury. *Stowell* v. *Pike*, 2 Maine, 387. And in such case he may recover of the mortgager to the extent of the injury to the estate, without proof of the insufficiency of the remaining security. *Byrom* v. *Chapin*, 113 Mass. 308. He may insure the mortgaged estate against fire, and in case of loss collect the insurance without liability to account for it upon the indebtedness of the mortgager, where there is no agreement between them to that effect. *Cushing* v. *Thompson*, 34 Maine, 496. If in possession he may maintain a complaint in his own name for damages caused by flowing under the mill act. *Ballard* v. *Ballard Vale Co.* 5 Gray, 468. If in possession, he cannot be dispossessed by the mortgager (by the common law) in a suit at law, even if the mortgaged debt, after condition broken, has been paid. *Wilson* v. *Ring*, 40 Maine, 116. But by R. S., c. 90, § 28, (see act of 1870, c. 142) a mortgagee may now be ousted by a suit at law brought after condition broken, if the debt be paid. These various decisions are based upon the idea that a mortagee is the legal owner of the property mortgaged. Many questions of a troublesome character arise in respect to mortgaged estates, which can be better adjusted in equity than at law. But the question now presented is in reference to the right at law of the mortgagee.

We find but few adjudications upon the exact question before us. In this state there are none. In New Hampshire (*Parish* v. *Gilmanton*, 11 N. H. 293,) it was held, not to be necessary to make a mortgagee a party in proceedings to lay out a highway over mortgaged land. But our theory of the character of a mortgage

of land does not prevail in that state. It is there regarded as possessing less of the attributes of a common law conveyance of an estate in fee than is accorded to it in this state. In that state a transfer of the debt secured, accompanied by a delivery of the mortgage, constitutes a legal assignment of the mortgage itself, without any writing thereon or deed. In such case the registry of deeds does not disclose the assignee, and there would be great difficulty in giving notice to such a party. The doctrine of that case would not apply with much force here. In New York (47 N. Y. 157,) notice to a judgment creditor is not necessary, in laying out highways; but for the reason that the creditor's statutory lien does not irrevocably attach to the fee of the estate of the debtor, but could be taken away at any time by the legislature. In Massachusetts, the decisions are unimportant and throw but little light upon the subject. It is merely said, in *Breed* v. *Eastern Railroad*, 5 Gray, 470, (reported in a note) that a sheriff's ruling, that a mortgager who was petitioner and whose estate was incumbered with mortgages was entitled to damages under his petition to the same extent as if no mortgages had existed upon the estate, was affirmed by the court. But it does not appear in the report of the case whether the mortgagees appeared or not or objected or not, nor whether any provision was made to protect their interests or not, nor is the ground for the ruling disclosed. Not unlikely the objection came too late, it being held in *Meacham* v. *Fitchburg Railroad*, 4 Cush. 291, that the objection to the want of proper parties should be made to the commissioners before the jury are called in. And in the same case it was also held that notice to a mortgagee was unnecessary, where the mort. gagee consents in writing that the proceedings may be in the name of the mortgager. Then, it is well settled law that it is no defense to a suit in the name of a mortgager, that a mortgagee has also a right of action for the same cause. He may never sue. See *Gooding* v. *Shea*, 103 Mass. 360, 363, 364. In *Breed* v. *Eastern Railroad, supra*, the mortgager was the petitioner, no one setting up any superior or opposing claim. The doctrine that a mortgagee's estate cannot be affected, where he is not a party in such proceedings, is maintained in Mississippi, in *Stewart* v.

*Raymond Railway,* 7 Smed. & M. 568; and in Iowa, in *Severin* v. *Cole,* 38 Iowa, 463; and in Wisconsin, in *Kennedy* v. *The Milwaukee & St. Paul Railroad,* 22 Wis. 581; though in these cases, being in equity, the railroad companies found total or partial relief in the orders of court, under their systems of foreclosure, that the estate so far as unencumbered by the railroad be first sold, and that, in case of deficiency of amount to pay the mortgaged debt, the portion occupied by the railroad be sold afterwards. The same rule would probably apply in this state, if we had jurisdiction in equity over the question. *Sheperd* v. *Adams,* 32 Maine, 63. Redfield (Railways, vol. 1, p. 286) says, "the only general rule as to parties, perhaps, is, that those having an interest in the question may become parties plaintiff, or be made parties defendant, according to the character and quality of the interest." In England, and in some of the states, the practice has been for the jury to ascertain the *quantum* of the damages merely, the title to the damages being a matter only with the courts. With us all questions, that of title included, are for the jury, questions of law being revisable by the court.

In this case, at this lapse of time, this action is all the remedy the plaintiff can have; and his claim for damages cannot be defeated. The taking the land was legal; the damages for such taking are recoverable in trespass. R. S., c. 51, § 6.

*Defendants defaulted for*
*$75 and interest thereon*
*from July* 1, 1870.

APPLETON, C. J., WALTON, DICKERSON, BARROWS and VIRGIN, JJ., concurred.